## State of Vermont v. Arthur Beshaw

[359 A.2d 654]

No. 195-75

Present: Smith, Daley, Larrow and Billings, JJ. and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed June 1, 1976

Motion To Stay Mandate Denied June 15, 1976

348

*Michael J. Sheehan,* Windsor County State's Attorney, White River Junction, for Plaintiff.

*Robert Edward West,* Defender General and *Charles S. Martin,* Appellate Defender, Montpelier, for Defendant.

**Billings, J.** The defendant appeals from a conviction of burglary in the nighttime, 13 V.S.A. § 1201, from the District Court of Vermont, Unit No. 6, Windsor Circuit. Defendant raises two central issues for resolution by this Court: first, that the trial court committed error in excluding defendant's offer of expert testimony respecting the possible effect of a hallucinogenic drug, mescaline, on the mental and physical faculties of witnesses testifying to events which occurred while they were under the influence; and secondly, that the trial judge improperly denied defendant's pre-trial "Motion to Disqualify the Presiding Judge". Resolution of the second issue necessarily requires this Court to consider, in part, an unrelated, antecedent criminal contempt proceeding which involved the defendant and the presiding judge in the court below.

The material facts are undisputed. Responding to an early morning report on September 16, 1974, concerning a possible

burglary taking place at the Crossroads Store in Quechee, Vermont, three police officers arrived on the scene and immediately placed two suspects, James W. Fisher and Charles R. Fulwider, into custody. A third suspect, whose description fit that of the defendant, was seen but managed to elude the police. Later that same day, after obtaining a search warrant, certain police officers proceeded to the apartment of one David F. VandeBogard and placed him under arrest for possession of stolen goods. Defendant, being present at VandeBogard's apartment when the officers arrived, was immediately arrested and charged with burglary in the nighttime and with carrying a deadly weapon while in the commission of a felony.

Defendant was never specifically identified as participating in the Crossroads Store burglary by any of the officers responding to the report of the break-in; however, earlier that evening, during a spot check, one of the officers observed the defendant riding in an automobile in the general vicinity with Fisher and Fulwider. At trial, Fisher, Fulwider, and VandeBogard each testified as to defendant's actual or admitted participation in the burglary. Each of these witnesses also admitted under cross-examination to having ingested varying amounts of the hallucinogenic drug, mescaline, within a few hours prior to the events to which they testified. Fulwider testified to taking 'three hits of mescaline"; Fisher to taking "one, two or three hits"; and VandeBogard testified generally to being "on mescaline".

Defendant's first claim of error is founded on the contention that in the light of the above facts, the trial judge committed error in not allowing the defendant's expert, Dr. Robbins, to testify generally as to the possible effect of the drug mescaline on the mental and physical faculties of a human being, assuming that it was under normal circumstances. Defendant's expert witness was offered to cast doubt on the credibility of the three witnesses. The manner, extent and scope of impeachment testimony lies within the limits of judicial discretion. *State* v. *Cedre*, 314 A.2d 790 (Me. 1974). The qualifications and foundation for opinions given by experts is a matter left to trial court discretion, *In re P. F.*, 133 Vt. 64, 66, 329 A.2d 632 (1974), and the court's action is not revers-

ible on appeal unless it appears from the evidence to be erroneous or founded upon an error of law. *Alling Construction Co.* v. *Bissette*, 132 Vt. 331, 318 A.2d 666 (1974). In order to find an abuse of discretion, it must affirmatively appear that the defendant was harmed or prejudiced by the exclusion of the offered expert testimony. *State* v. *Morrill*, 127 Vt. 506, 253 A.2d 142 (1969); *State* v. *Goyet*, 120 Vt. 12, 132 A.2d 623 (1957). A careful examination of the record here does not persuade us that the exercise of judicial discretion has been abused.

■ Although the witnesses Fisher, Fulwider, and VandeBogard testified to ingesting varying amounts of the drug mescaline on the evening of the break-in of the Crossroads Store, there was no evidence adduced that they were in fact under the influence of any drug at the time the events took place to which they testified. The record discloses some doubt as to exactly what the substance was the witnesses ingested. Additionally, the term "hit" is, at best, vague and amorphous, leaving to speculation what amounts of a foreign substance each of the witnesses has partaken. The court below was faced with vague testimony regarding the identification and the amount of the substance ingested, and an insufficient foundation had been laid for the proffered expert testimony. Faced with these factors, we cannot hold, as a matter of law, that there was an abuse of discretion in denying defendant's offer of expert testimony.

In reaching this conclusion the Court is mindful that the evidence at trial was overwhelming and uncontradicted in pointing to defendant's guilt. Defendant has not satisfied the burden of showing how he was harmed or prejudiced by the lower court's ruling. *State* v. *Berard*, 132 Vt. 138, 315 A.2d 501 (1974).

In order to resolve the second issue on appeal, whether defendant's pretrial motion to disqualify the presiding judge was improperly denied, the test enunciated in *Leonard* v. *Willcox*, 101 Vt. 195, 215, 142 A. 762 (1928) regarding judicial disqualification is controlling:

Before a reviewing court can hold that a judge has erred upon the ground of his bias and prejudice against a party, it must appear that it is the judge who is prej-

udiced against the party, and not that it is the party who is prejudiced against the judge.

It is the existence of bias or prejudice in [the trial judge's] mind against the respondent which must be clearly shown. (citations omitted.)

In order to maintain a colorable claim of judicial disqualification against the presiding judge, defendant must affirmatively show bias or prejudice directed against him. See A.B.A. Code of Judicial Conduct, No. 3 (C)(1) (Vermont Supreme Court Administrative Order No. 34), 12 V.S.A. App. VIII.

In support of his motion defendant argues that an unrelated prior conviction on contempt charges before the presiding judge below which resulted in four months' incarceration is sufficient to prove bias and prejudice. The contempt conviction arose out of an incident where defendant assaulted the presiding judge by kicking a metal stand at him. We are unable to say that this isolated incident, occurring some nineteen months before the trial of the instant case, is, in and of itself, sufficient to compel the presiding judge to disqualify himself on the basis of bias or prejudice. The contempt proceeding is not material to the instant case. Although in the case at bar no bias or prejudice has been shown, and no error therefore appears, in view of the provisions of Vermont Supreme Court Administrative Order No. 34, Code of Judicial Conduct, No. 3(C) (1), wherein a judge should disqualify himself if his impartiality might be reasonably questioned, we feel it would have been better judgment on the part of the trial judge to have stepped aside.

*Affirmed.*